Argued October 10; reversed November 21, 1939; reargued on re-
hearing February 27; former opinion adhered to April 16, 1940

## STAPLES *v.* SENDERS ET AL.
### (96 P. (2d) 215, 101 P. (2d) 232)

In Banc.

*James Arthur Powers*, of Portland (Otto J. Kraemer, of Portland, on the brief), for appellants.

*Calvin N. Souther* and *Robert Mautz*, both of Port-
land (Wilbur, Beckett, Howell & Oppenheimer, of Port-
land, on the brief), for respondent.

LUSK, J. Numerous questions have been argued touching the liability of a landlord to an invitee of a tenant injured on the demised premises, and as to the construction and applicability of the ordinance pleaded and relied on by the plaintiff, none of which we find it necessary to discuss or decide, because we are of the opinion that if the defendant was guilty of any negligence, either under the common law or by reason of failure to comply with the ordinance, such negligence was not the proximate cause of the plaintiff's injury.

■ If the ordinance be given the construction placed upon it by the plaintiff, it was the defendant's duty, when she made the repairs after the fire in 1935, to provide railings at the trapdoor and a railing along the stairway extending above the floor, instead of one which came only to the floor level. The only negligence pleaded, or of which there can be said to be proof, consists of these omissions, and for present purposes it makes no difference whether such negligence be treated as a violation of the ordinance or the breach of a common law duty. It is not contended that the ordinance requires a railing at the entrance to the stairs. That it does not, was admitted on the argument by counsel for the respondent, and this admission accords with a sensible construction. The ordinance applies, generally speaking, to all stairways in all the buildings in the city of Portland, and it would be a patent absurdity to hold that the City Council intended that property owners must place barriers at the heads of stairways and so interfere with their convenient use. As to the railing along the stairs, the only complaint made is of the failure to prolong it above the level of the floor. This, we think, is required in those cases where the ordinance applies. It is not contended that there should have been more than one stair railing or that the one provided was placed on the wrong side of the stairway.

■ The plaintiff was proceeding sidewise examining the clocks on the wall, when he fell into the opening at the entrance to the stairs. No railing was required at this point, and the absence of railings on the other three sides of the opening obviously had nothing whatever to do with the accident. If authority were needed for this conclusion it may be found in the case of *Torpey v. Sanders*, 248 App. Div. (N. Y.) 303, 305, 289, N. Y. S.

532. With respect to the stair railing, the only claim possible to be made of causal connection between the failure to build it in the manner the ordinance enjoins and the accident which befell the plaintiff, must be based on his testimony that, after he started to fall, he tried to catch hold of something, and that if he could have done so he would have broken his fall, and so have saved himself. In fact, no other theory has been urged by the plaintiff. It might be difficult to build a solid or dependable determination of fact on that possibility under any circumstances. The accident occurred when the plaintiff, evidently unaware that the trapdoor was up or that he was close to it, his mind and eyes wholly intent on the clocks he was examining, plunged suddenly into the opening. Had the railing been extended upward from the floor he would have plunged just the same. This no one disputes. What might have happened thereafter under different circumstances, had the railing been extended as it is claimed it should have been, would seem to be too conjectural to be considered as evidence. But, under the facts of this case, this is not even a matter for conjecture. Mr. Staples was facing the wall, with his back to the left side of the stairway along which the railing was built. When he fell and threw out his hands they came into contact, according to his testimony, with the open trapdoor, which was raised and slanting away from the floor on the opposite side. Doubtless he acted instinctively, as a man usually does when he falls into a sudden and hidden danger. It would be fantastic to think that he looked about for a handhold, or could have done so. As he states, "he threw out both hands". His back was to the stair railing, and had it been constructed in all respects in accordance with all the requirements of the ordinance, his hands would still never have

grasped it. Its absence neither caused him to fall nor was it in any way a factor in the ensuing consequences.

■ The rule is universally recognized that in order to impose liability for an injury claimed to be the result of a violation of a statute or ordinance "it must appear that compliance with the statute or ordinance would have prevented the injury" or "it may be shown as matter of defense that compliance with the statute or ordinance would not have prevented the injury complained of in a particular case"; 45 C. J., Negligence, 904, § 479; 1 Shearman and Redfield, Negligence, 6th Ed., 51, § 27. The rule with respect to failure to perform a common law duty is not different: *Eklof v. Waterston*, 132 Or. 479, 285 P. 201, 68 A. L. R. 1002; *Ring v. City of Cohoes*, 77 N. Y. 83, 33 Am. Rep. 574; Restatement of Law of Negligence, §§ 431, 432; 45 C. J., Negligence, 904, § 479. As stated by Professor Beale in 33 Harvard Law Review 633, 637, and quoted with approval in *Eklof v. Waterston*, supra:

■ "Where the act is the failure merely of a legal duty, causation is established only when the doing of the act would have prevented the result; if the result would have happened just as it did whether the alleged actor had done his duty or not the failure to perform the duty was not a factor in the result, or, in other words, did not cause it."

A case closely analogous on the facts and tending to support the view we have taken here is *Gibson v. Hoppman*, 108 Conn. 401, 410, 143 Atl. 635, 75 A. L. R. 148. The plaintiff fell down a stairway which she was descending. One ground of negligence charged was the failure of the defendant to light the stairway, and another that no handrail was provided. The plaintiff testified that she kept her right arm against the wall to guide her as she passed down the stairs and fell as she

reached a turn. The court held that on the former charge a jury question was presented, but that the jury could not reasonably have found that the defendants were guilty of a breach of duty in failing to provide a handrail or that its absence was a proximate cause of the plaintiff's fall. Other cases illustrating the principle and more or less analogous are *Iudica v. DeNezzo*, 115 Conn. 233, 161 Atl. 81; and *Wartik v. Miller*, 48 Ohio App. 494, 194 N. E. 433.

■ Whether plaintiff was guilty of contributory negligence in passing along the floor without keeping a lookout; whether Mrs. Herman's conduct in leaving the trapdoor open and failing to warn the plaintiff, constituted negligence on her part, it is unnecessary to determine. But certain it is, under the undisputed facts in the record, that it was one of these acts, or both of them concurring, whether negligent or otherwise, and not the failure of the defendant to comply with the ordinance, which was the proximate cause of plaintiff's injury: *Whisler v. U. S. National Bank*, 160 Or. 10, 82 P. (2d) 1079, and *Lewis v. Jake's Famous Crawfish, Inc.*, 148 Or. 340, 36 P. (2d) 352. The absence of a railing was, as Mr. Justice RAND said in the Eklof case, "only a condition or circumstance surrounding the happening of the accident".

Since the evidence shows that one of the essential elements of a cause of action based on negligence is lacking in the plaintiff's case, the Circuit Court erred in denying defendant's motion for a directed verdict, and the judgment in favor of the plaintiff must be reversed and one entered for the defendant. It is so ordered.

RAND, C. J., and KELLY, BELT and BEAN, JJ., concur; ROSSMAN and BAILEY, JJ., not sitting.

Argued on rehearing February 27; former opinion adhered to
April 16, 1940

ON REHEARING

(101 P. (2d) 232)

LUSK, J. The plaintiff recovered a judgment in the Circuit Court for personal injuries sustained when he fell through an open trapdoor on premises owned by the defendant and in the possession and control of a tenant of the defendant. Without passing on other questions presented in the record, we held, in a former opinion, that, if there was any negligence of the defendant shown, such negligence as a matter of law was not the proximate cause of the accident. We granted a rehearing because of certain evidence brought to our attention by counsel for the plaintiff, which, if susceptible to counsel's construction, casts doubt upon the correctness of our conclusion.

The accident is described in some detail in our former opinion. It may here be briefly summarized as follows. The plaintiff was on the premises, occupied as an antique and second-hand shop by the defendant's lessee, as a prospective customer. The trapdoor, when closed, constituted a part of the floor of the shop and covered a flight of stairs to the basement, to which the plaintiff, with his wife and the proprietress of the shop, had descended but a few minutes before the accident. On their return to the ground floor the trapdoor was left open. The plaintiff then proceeded to examine some clocks which were hanging on one of the walls of the shop. As he did so he was facing the wall and moving sidewise in the direction of the opening. His gaze and attention being fixed on the clocks, he came to the opening without seeing it and plunged through to the floor of the basement below.

■ The only ground of negligence set forth in the complaint was the failure of the defendant to maintain railings around the opening and a railing along the upper portion of the basement stairs. On one side of these stairs was a railing which stopped at the level of the floor. Under plaintiff's contention this railing should have been extended through the trapdoor and above the floor. It was our view that, even though such railings had been provided, they would not have prevented the accident because the plaintiff's testimony, a portion of which is quoted in the opinion, showed that, owing to the manner in which he fell and threw out his hands, no such railing, had it been there, would have come within his grasp. Our re-examination of the testimony, and particularly that portion of it on which counsel for the plaintiff rely in their petition for rehearing, convinces us that that construction of the evidence was too restricted. While the record is not clear and plaintiff's statements are somewhat confusing, we think the jury could have found from his evidence, taken as a whole, that, as he fell, he reached with his left hand for the place where it is claimed the railing along the stairway should have been. If this were so, he might have grasped it and broken his fall; and, although the matter is more or less speculative, yet, under those circumstances, if negligence of the defendant in the particular alleged was shown, the question of proximate cause would then become a question for the jury: *Lyons v. Lich*, 145 Or. 606, 613, 28 P. (2d) 872; *American National Bank v. Wolfe*, 22 Tenn. App. 642, 125 S. W. (2d) 193; *Dexter v. Fisher*, 256 App. Div. 738, 11 N. Y. S. (2d) 776; *Renfro Drug Co. v. Jackson*, (Tex. Civ. App.) 81 S. W. (2d) 101.

It becomes necessary, therefore, to determine whether the owner of the premises was guilty of a breach of duty to the plaintiff in failing to surround the trapdoor with handrails and in failing to extend above the floor level the handrail which ran alongside the stairs.

The plaintiff has pleaded, and relies upon, the Building Code Ordinance No. 33911 of the City of Portland, passed in 1918, the pertinent sections of which read as follows:

"Section 66. The regulations covering the erection of buildings as given in this code shall apply to buildings hereafter erected and shall apply, under certain conditions, to buildings altered and repaired as covered in Sections 68 and 69."

"Section 69 (a) A building which is repaired to an extent exceeding 60 per cent of its value (not deducting from such value any loss caused by fire) in any period of six (6) months, shall conform to all of the regulations governing the erection of a new building.

"(b) In the repair of any portion of a building not covered by paragraph 'a', the work done shall as far as is practical, improve the conditions or conform to the code except the roof covering shall not be repaired to an extent exceeding 40 per cent in a period of twelve (12) months unless the entire roof is changed to conform to the code."

"Section 516. All stairways over three (3) risers in height shall have a substantial railing along the outside of same and if stairs are over four (4) feet or more in width, a railing shall be provided on both sides. Substantial railings shall be provided for well holes of stairs and all handrails to be used by the public shall be at least thirty (30) inches in height measured vertically in the center of treads or in the center of platform landings."

The building was erected before the ordinance was passed, but afterwards, in 1935, a fire occurred which

damaged the trapdoor and the stairway beneath it, and the defendant made the necessary repairs at a cost of approximately five per cent of the value of the building. It is the contention of the plaintiff that in making these repairs the defendant failed to comply with the requirement of Section 69 (b), that "the work done shall, as far as is practical, improve the conditions or conform to the code". The Circuit Court submitted the question to the jury, instructing them that, if they found that the trapdoor constituted a wellhole when open, and that it would have been practical for the defendant in replacing the trapdoor "to have improved the conditions or conformed to the code by constructing a substantial railing for said wellhole", and that she failed to do so, she was negligent; and, further, that, if the jury found that "it was practical for the defendant to have improved the conditions or conformed to the code by constructing a handrail along the outside of the upper portion of said stairs", and that she failed to do so, she was negligent.

■ It was the duty of the court to construe the ordinance, and it was error so to charge the jury as to permit them to determine whether or not its provisions governed the rights of the parties. The question, for example, whether the opening in the floor was a wellhole within the meaning of the ordinance was a question of law and not of fact. Were it to be held otherwise, then in another case presenting identical facts another jury could find that such an opening was not a wellhole and that the ordinance was inapplicable, and there would be no rule for the guidance either of property owners or the officers of the city.

■ The defendant having, at the trial, by appropriate motions, raised the question, it becomes our duty

to construe the ordinance and determine whether it applies to the facts presented by the record in this case. In so doing, we are required to avoid imputing to the lawmaking body an intention that would lead to absurdity and to give to the provisions a reasonable construction. "A thing within the intention is regarded as within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention." *People v. Chicago*, 152 Ill. 546, 551, 38 N. E. 744.

The use of trapdoors in buildings and sidewalks is a matter of common knowledge (*Whisler v. U. S. National Bank*, 160 Or. 10, 82 P. (2d) 1079, and *Lewis v. Jake's Famous Crawfish, Inc.*, 148 Or. 340, 36 P. (2d) 352), and is recognized by the Building Code of the City of Portland, Section 794. Ordinarily trapdoors in buildings cover a flight of stairs, and about the only purpose they serve is to form a part of the floor when not open and thus permit the free use of that portion of the floor space. See *Torpey v. Sanders*, 248 App. Div. 303, 289 N. Y. S. 532. If they must be surrounded by railings this utility is lost, and the trapdoors themselves might as well be abolished. We are not now questioning the power of the city council to enact a regulation abolishing them, but only calling attention to the consequences of attaching to the ordinance the meaning insisted upon by the plaintiff.

The regulations do not refer specifically to trapdoors, but to wellholes of stairs. A wellhole is defined as "the open space in a floor, to accommodate a staircase" (Funk and Wagnall's New Standard Dictionary), and in a literal sense that definition may be said to fit the case when the trapdoor is open, though obviously it does not when the trapdoor is closed. We

are, therefore, faced with an ambiguity in the ordinance as it is attempted to be applied here, and we think it accords more with common sense to take the view that the city council had no intention of requiring property owners to build handrails around what most of the time is, to all intentions and purposes, a part of the floor of the building, and thus to destroy the only utility that a trapdoor possesses. This also holds true with respect to a stair railing extended through a trapdoor and above the floor.

We find the expression wellholes used again in the following portion of Section 797 of the ordinance: ''Except as provided for in Sections 794, 795, and 796, all well holes, shafts and other vertical openings in floors and between the ceiling and the roof shall be enclosed on all sides with masonry walls or fireproof partitions'', etc. Section 794 reads in part: ''Unless specifically provided otherwise in this code, openings in floors not enclosed or protected by trapdoors or hoods in buildings exceeding two (2) stories in height, shall be permitted only'' in buildings of certain grades. Section 795 deals with elevator shafts, and Section 796 with clothes chutes and wood lifts, and neither throws light on the subject. But, in Sections 794 and 797, it is seen that the city council has used different words to convey the ideas of what we commonly think of as a wellhole and a similar opening which is protected by a trapdoor, a discrimination in terms which we believe the legislative body would have been at equal pains to employ had the intention been to require railings to be maintained at trapdoors.

In *Morrison v. McAvoy*, 7 Cal. Unrep. 37, 70 P. 626, an ordinance providing that ''every person shall keep around every * * * flight of stairs descending

from the sidewalk to the basement owned or occupied by him, a fence or railing at least three feet high" was held not applicable to stairs protected by trapdoors, but only to "open stairways as they are sometimes constructed next to the building or next to the curb, and where the protection around the stairs is by a railing". The language of the ordinance, literally read, was broad enough to include the stairs in question, but the court refused, and we think rightly, so to apply it.

■ We are of the opinion that the ordinance here relied on has no application to the facts of this case, and it remains to consider the plaintiff's contention that the defendant was guilty of a breach of duty which she owed to the plaintiff at common law. Being the owner of the premises which she had leased to another, who had the exclusive possession and control, the defendant would not be liable on account of personal injuries sustained by her lessee's invitee, unless such injuries were caused by some defect in the premises existing at the time of the letting or resulting from the owner's negligence in the making of repairs, either voluntarily or pursuant to the stipulations of the lease: *Lyons v. Lich*, 145 Or. 606, 28 P. 872; *Senner v. Danewolf*, 139 Or. 93, 103, 293 P. 599, 6 P. (2d) 240; *Ashmun v. Nichols*, 92 Or. 223, 178 P. 234, 180 P. 510; *Fleischner v. Citizens' Investment Company*, 25 Or. 119, 126, 35 P. 174; 1 Tiffany, Landlord and Tenant, 649, § 96; 16 R. C. L., Landlord and Tenant, 1067, § 588; 36 C. J., Landlord and Tenant, 225, § 914. As to defects in the leased premises existing at the time of the demise it is generally held that even then the landlord is not liable for injuries caused by them to his tenant, or one standing in the tenant's right, unless they are so hidden that the lessor could be regarded as under an obliga-

tion to notify the lessee of their existence. 1 Tiffany, *ibid*, 563, § 86d, 649, § 96a; 16 R. C. L., *ibid*, 1068, § 588; 36 C. J., *ibid*, 204, § 874. It has been held in this state, however, that where the landlord creates a nuisance upon his premises and then demises them, and an invitee of the lessee is injured as the result, the landlord remains liable for the consequences of the nuisance as the creator thereof, notwithstanding, apparently, that the dangerous condition was known to the lessee as well as to the landlord: *Senner v. Danewolf*, supra; see 16 R. C. L., *ibid*, 1069, § 589.

It follows from these principles that the defendant here is not liable to the plaintiff for the injuries sustained by him unless it can be said that his injuries were caused by conditions existing on the premises at the time of the demise, which constituted a nuisance, or became such as a result of the repairs made by the defendant following the fire damage in 1935; and that actually presents but one question because, so far as any charge of negligence in this case is concerned, the conditions were, for all practical purposes, the same after the repairs were made as at the time of the demise. The trapdoor itself and the stairs beneath it were free from structural defects. That the maintenance of this type of construction by an owner of the premises is not nuisance, nor any evidence of negligence, is established by two recent decisions of this court: *Whisler v. U. S. National Bank*, supra, and *Lewis v. Jake's Famous Crawfish, Inc.*, supra. In the latter case a person was injured by falling through an open trapdoor in the sidewalk. In the former an invitee on leased premises was injured by falling through an open trapdoor in a store. In both cases the owners of the premises were held blameless. The doctrine of these precedents,

that there is nothing inherently dangerous about a trapdoor; that the only danger lies in its use, over which the landlord of leased premises has no control; and that the proximate cause of an accident, such as befell the plaintiff here, is not any negligence of the owner of the premises but the act of the tenant in permitting the trapdoor to remain open when the stairs are not in use, applies with all its force to the case at bar.

For these reasons we are of the opinion that the Circuit Court erred in denying the defendant's motion for a directed verdict. Our former opinion is modified in the particulars above indicated, but we adhere to the conclusion there stated that the judgment in favor of the plaintiff must be reversed and a judgment entered for the defendant.

RAND, C. J., and ROSSMAN, KELLY and BELT, JJ., concur.

BEAN and BAILEY, JJ., not sitting.